UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NICK MILETAK,<br><br>  Plaintiff,<br><br>  v.<br><br>WINGZ, INC., et al.,<br><br>  Defendants. | Case No.  5:24-cv-01063-EJD<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 10 |

Pro se Plaintiff, Nick Miletak ("Miletak"), filed the present suit for various California torts against Defendants Wingz, Inc., ("Wingz"), a transportation service platform, and Turn Technologies, Inc., ("Turn"), a background screening company, alleging that Wingz wrongfully declined to reactivate his driver profile after Turn refused to conduct his background check for Wingz due to a prior civil dispute between Turn and Miletak. *See* Compl., ECF No. 1-1.

Before the Court is Turn's motion to dismiss. Mot., ECF No. 10. Miletak filed an untimely opposition,[1] and Turn filed two replies—one following Miletak's missed opposition deadline, and another following Miletak's untimely opposition filing. First Reply, ECF No. 17; Opp'n, ECF No. 21; Second Reply, ECF No. 22.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for

---

[1] The Court declines Turn's request to strike Miletak's untimely opposition or award attorneys' fees at this time. Second Reply 2. In light of Miletak's status as a pro se litigant, and the fact that this is Miletak's first late filing, the Court will exercise its discretion to grant him procedural leniency in this one instance. However, the Court warns that failure to follow the Federal Rules of Civil Procedure or Civil Local Rules will result in the Court striking future improper filings. *Carter v. Comm'r of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986) (stating that a pro se party is "expected to abide by the rules of the court in which he litigates").

1    decision without oral argument pursuant to Local Rule 7-1(b).  For the follow reasons, the Court

2    **GRANTS** Turn's motion to dismiss.

3    **I.      BACKGROUND**

4           Miletak alleges the following facts.  In November 2018, Miletak applied for and

5    successfully obtain employment with Wingz providing passenger transportation services to users

6    of the Wingz mobile app.  Compl. ¶¶ 28, 29.  Part of the onboarding process required that Miletak

7    authorize Wingz to conduct a criminal background report.  *Id.* ¶ 29.  Miletak provided

8    authorization, and Miletak's background report was processed and returned as "clear."  *Id.*

9    Miletak continued providing passenger transportation services to users of the Wingz mobile app

10   from December 2018 through January 2022.  *Id.* ¶¶ 31.

11          Meanwhile, independent of his interactions with Wingz, Miletak filed a civil case against

12   Turn in December 2020 alleging causes of action under the Investigative Consumer Reporting

13   Agency Act ("ICRAA").  *Id.* ¶ 32.  Miletak and Turn ultimately settled the lawsuit, and it was

14   dismissed in April 2021.  *Id.* ¶ 33.

15          Miletak continued driving Wingz mobile app users from December 2018 through January

16   2022, at which time Miletak was notified that his account had been deactivated.  *Id.* ¶¶ 31, 34.

17   Miletak contacted Wingz to request that his driver account be reactivated, and Wingz sent Miletak

18   a link to authorize a new background check for the re-investigation process.  *Id.* ¶ 36.  The

19   background check would be processed by Turn.  *See id* ¶¶ 38, 39.  However, as a result of

20   Miletak's lawsuit against Turn, Miletak was unable to complete the authorization process because

21   Turn refused to run his background check.  *Id.* ¶¶ 38, 39.  Miletak contacted Wingz to alert them

22   of this issue on January 28, 2022.  *Id.* ¶ 39.  On January 31, 2022, Wingz responded in an email

23   stating: "We appreciate you taking the time to reapply to provide rides on the Wingz platform.

24   However, we have decided to hold off on proceeding with reactivating your driver profile for the

25   time being."  *Id.* ¶ 40.

26          Miletak brings claims for wrongful termination and California labor code violations

27   against Wingz; claims for intentional interference with economic advantage ("intentional

28   Case No.:   5:24-cv-01063-EJD
     ORDER GRANTING MOTION TO DISMISS
                                                 2

1  interference") against Turn; and claims for negligent infliction of emotional distress ("NIED") and

2  intentional infliction of emotional distress ("IIED") against both Defendants. Turn filed the

3  present motion to dismiss the claims pertaining to Turn. *See* Mot. Wingz has not filed a motion to

4  dismiss the claims pertaining to Wingz. Thus, the Court will only address Miletak's claims

5  against Turn at this time.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Pro. 8(a)(2). While a plaintiff need not offer detailed factual allegations to meet this standard, she is required to offer "sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a complaint must (1) "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" and (2) "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must generally accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S at 664. The court also must construe the alleged facts in the light most favorable to the plaintiff. *See Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014) ("[The court] must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But still, even pro se pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong" and how they are entitled to relief. *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS

3

1  leave to amend even if no request to amend the pleading was made, unless it determines that the

2  pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d

3  1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

**III.   DISCUSSION**

Turn argues that Miletak failed to plead facts sufficient to state his claims against Turn for intentional interference, IIED, and NIED under Federal Rule of Civil Procedure 12(b)(6). *See* Mot. The Court will address each claim in turn.

### A.   Intentional Interference

The elements of a California common law tortious interference with prospective economic advantage are: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; (5) resulting damage," and (6) defendant's wrongful conduct "by some legal measure other than the fact of interference itself." *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015).

Turn argues that Miletak's intentional interference claim fails to meet two specific elements: wrongful conduct and causation.

#### 1.   Wrongful Conduct

To allege "wrongful" conduct for purposes of an intentional interference claim, a plaintiff must provide facts to show that the defendant's conduct was prohibited by "constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1159 (Cal. 2003).

Turn argues that there are no facts to suggest that Turn's conduct in refusing to run a background report for Miletak was "wrongful." Mot. 8–10. Rather, Turn argues that it has the right to refuse to do business with anyone they choose, even if that choice is in retaliation for a lawsuit. *Id.* Turn cites to *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 829 (9th Cir. 2001), where the Ninth Circuit held that, even if a defendant acts in "retaliation for the lawsuit, the refusal to deal would not establish wrongfulness, a necessary element of the tort of

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS
4

intentional interference with prospective economic advantage in California." Turn also highlights the complaint's conclusory allegation that Turn's conduct was "prohibited" without providing any additional facts. Mot. 9.

Miletak argues that Turn's conduct was wrongful because it violated the ICRAA and Fair Credit Reporting Act ("FCRA"), which place legal obligations on Turn to disclose Miletak's report in accordance with his written request. Opp'n 8.

Turn first highlights that this argument is impermissibly raised for the first time in Miletak's opposition and has no foundation in the intentional interference cause of action. Second Reply 5. Turn also argues the ICRAA and FCRA do not impose obligations to furnish reports upon request; rather, they place limitations on the circumstances where companies may furnish reports, one permitted circumstance being upon a consumer's request. *Id.* at 5–7.

The Court agrees with Turn. There is nothing in the complaint to support Miletak's argument that Turn's alleged conduct was "wrongful." The Court finds Miletak's arguments regarding the ICRAA and FCRA unpersuasive not only because these statutes are not plead as support to show "wrongful" conduct in the complaint,[2] but also because Turn's statutory interpretation is correct—the plain reading of the statutory text shows that Turn may only prepare background reports when it has the written consent of the subject consumer, as well as other specifically stated circumstances; the statutes do not mandate that Turn prepare a background report whenever a consumer requests one. Cal. Civ. Code § 1786.12(c) ("An investigative consumer reporting agency shall *only* furnish an investigative consumer report . . . . [i]n accordance with the written instructions of the consumer to whom it relates.") (emphasis added); 15 U.S.C. § 1681b(a) ("A consumer reporting agency may furnish a consumer report *under the following circumstances and no other*: . . . . [i]n accordance with the written instructions of the consumer to whom it relates.") (emphasis added). Apart from arguing ICRAA and FCRA

---

[2] While Miletak references ICRAA in the complaint, he cites the statute to note his prior complaints that Turn's background reports contained errors in violation of the ICRAA, not to support his new argument that Turn's refusal to provide him a background report violated the ICRAA. *See, e.g.,* Compl. ¶¶ 21–27.

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS
5

1  violations in his opposition, there are no additional facts in the complaint to suggest that Turn's
2  refusal to conduct business with Miletak under these circumstances violated any constitutional
3  provision, statute, regulation, common law, or other legal standard.

### 2. Causation

"Legal causation has two components: cause in fact and proximate cause." *Steinle v. United States*, 17 F.4th 819, 822 (9th Cir. 2021) (internal quotation marks omitted) (quoting *S. Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, 61 Cal. 4th 291, 298 (2015)). "Although causation often presents a question of fact for the jury, where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact." *Id.* at 822 (internal quotation marks omitted) (quoting *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 353 (2015)). As a matter of law, a defendant's act is not the proximate cause of a harm where a chain of intervening events renders the connection between defendant's act and the harm too remote. *Id.*

Turn argues that the only reasonable conclusion from the Complaint's factual allegations is that Wingz, not Turn, was the proximate cause of Miletak's alleged lost income and other alleged harm. Mot. 7. In other words, Wingz's choice to not reactivate his driver profile caused the alleged harm, not Turn's refusal to prepare a background report. *Id.* Turn highlights that Miletak admits as much, alleging that Wingz could have "select[ed] an alternative background check vendor to prepare his report" after Turn refused to run the report. *Id.* (quoting Compl. ¶ 4).

Miletak's response is brief. *See* Opp'n 8. He asserts that Turn's refusal to furnish a background report was the "but-for" causation for Wingz declining to reactivate his driver account but does not address Turn's proximate cause arguments. *Id.*

The Court finds that Miletak has failed to allege that Turn's refusal to run his background report caused his alleged injuries. As Miletak himself conceded, Wingz could have chosen another background screening company to conduct Miletak's background report after Turn refused, but it did not. According to Miletak's complaint, it was Wingz's conduct in declining to reactivate his account rather than seek out an alternative screening company that caused the

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS
6

1 alleged harm.

2                                         * * *

3 Therefore, the Court finds that Miletak failed to plead facts sufficient to state a claim for

4 intentional interference. Accordingly, the Court **GRANTS** Turn's motion to dismiss this claim

5 with leave to amend. *See Lopez*, 203 F.3d at 1127 ("[The] court should grant leave to amend even

6 if no request to amend the pleading was made, unless it determines that the pleading could not

7 possibly be cured by the allegation of other facts.").

### B.   IIED

A plaintiff bringing an IIED claim must prove: (1) "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress;" (2) that the plaintiff actually suffered severe emotional distress; and (3) that the defendant's outrageous conduct was the "actual and proximate" cause of the plaintiff's emotional distress. *Catsouras v. Dep't of Cal. Highway Patrol*, 181 Cal. App. 4th 856, 874–75 (Cal. 2010). Whether the alleged conduct rises to the level of "extreme and outrageous," or the alleged emotional distress rises to the level of "severe," are questions of law for the court. *Spirtos v. Allstate Inc., Co.*, 2003 WL 25900368, at *3 (C.D. Cal. Jan. 10, 2003) (citing *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 44 (Cal. 1987)); *Kocol v. United States*, 2015 WL 12670408, at *9 (C.D. Cal. May 7, 2015).

Turn argues that Miletak's IIED claim fails because it consists of conclusory allegations and contains no facts to show that Turn's refusal to prepare Miletak's background report was outrageous or that Miletak's emotional distress was severe. Mot. 11. The Court will address each argument below.

#### 1.   Outrageous Conduct

The conduct alleged in an IIED claim must be "so extreme and outrageous as to go beyond all possible bo[u]nds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Est. of Chivrell v. City of Arcata*, 2023 WL 6277288, at *8 (N.D. Cal. Sept. 26, 2023) (quotation marks and citation omitted). It is not enough "that the defendant has

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS
7

acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 841 (9th Cir. 2002) (quoting Restatement (Second) of Torts § 46 cmt. d (Am. L. Inst. 1965)).

Turn argues that Miletak's IIED claim fails because it consists of conclusory allegations and contains no facts to show that Turn's refusal to prepare Miletak's background report was "outrageous." Mot. 11. Miletak argues that Turn's conduct was "outrageous" because it acted in retaliation against Miletak for Miletak's previous civil suits and in violation of the ICRAA and FCRA. Opp'n 9.

The Court finds that Turn's refusal to do business with Miletak was not outrageous conduct. As discussed above, Turn is lawfully permitted to choose to not do business with Turn, even in retaliation for a civil lawsuit, and the conduct alleged does not implicate the ICRAA and FCRA sections cited in Miletak's opposition. *See, e.g., Unterberger v. Red Bull N. Am., Inc.*, 162 Cal. App. 4th 414, 419 (Cal. 2008) ("[T]he termination of a business relationship, is, as [a] matter of law, not the type of 'outrageous' conduct that is required to support a cause of action for intentional infliction of emotional distress."); *Singman v. NBA Props., Inc.*, 2014 WL 7892049, at *6 (C.D. Cal. Jan. 17, 2014), aff'd, 656 F. App'x 371 (9th Cir. 2016) ("Nor can [defendant's] termination of its negotiations with [p]laintiff be considered 'extreme and outrageous.'"). Pleading "outrageous" conduct in California is an extremely high burden, and there are simply no facts to suggest that Turn's conduct could be characterized as more than "malice" or done with an intent beyond that "which is tortious or even criminal." *Wallis*, 306 F.3d at 841.

### 2. Severe Emotional Distress

"Severe emotional distress means emotional distress of such substantial . . . or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1004 (Cal. 1993) (quotation marks and citation omitted).

Turn similarly argues that Miletak's IIED claim fails because it consists of conclusory

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS
8

1    allegations and contains no facts to show that Miletak suffered "severe" emotional distress.  Mot.
2    11.  Miletak does not address Turn's arguments regarding deficiencies on this point.
3            The Court finds that Miletak has also failed to allege facts to show that the emotional
4    distress he suffered was "severe."  Miletak's allegations that Turn's conduct caused him to suffer
5    "humiliation, embarrassment, mental anguish, severe anxiety, and emotional distress," Compl. ¶
6    75, is simply not enough under these circumstances to rise to the quality of injury "that no
7    reasonable [person] in civilized society should be expected to endure."  *Potter*, 6 Cal. 4th at 1004.

### 3. Causation

The Court also notes that Miletak's IIED claim fails to meet the causation requirement here for similar reasons as it failed to meet the causation requirement for intentional interference—Miletak himself alleged that Wingz had the option to seek a different background screening company rather than outright refuse to reactivate his driver account, Compl. ¶ 5, but they chose to only seek services from Turn.  Thus, the Court finds that Miltak has failed to allege facts required to show causation for his IIED claim.

* * *

Therefore, the Court finds that Miletak failed to plead facts sufficient to state a claim for IIED.  Accordingly, the Court **GRANTS** Turn's motion to dismiss this claim.  The Court determines that Miletak's IIED claim could not possibly be cured by the allegation of additional facts and accordingly does not grant Miletak leave to amend this claim.  *See Lopez*, 203 F.3d at 1127.

### C. NIED

A claim for NIED is "not an independent tort, but rather is derived from the tort of negligence."  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal.3d 583, 588 (Cal. 1989).  Thus, a claim for NIED requires the plaintiff to establish the traditional elements of duty, breach of duty, causation, and damages, as well as show that he or she has suffered "serious" emotional distress.  *Wong*, 117 Cal. Rptr. 3d at 767–68.

For all the reasons stated in the Court's discussion of IIED, the Court finds that Miletak

Case No.: 5:24-cv-01063-EJD
ORDER GRANTING MOTION TO DISMISS
9

has failed to allege facts sufficient to show "serious" emotional distress or show that Turn's conduct proximately caused Miletak's alleged injury.

Therefore, the Court finds that Miletak failed to plead facts sufficient to state a claim for NIED and **GRANTS** Turn's motion to dismiss this claim. The Court similarly determines that Miletak's NIED claim could not possibly be cured by the allegation of additional facts and thus does not grant Miletak leave to amend this claim. *See Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Turn's motion to dismiss. The Court will allow Miletak to amend his claim against Turn for intentional interference, but Miletak is not permitted to amend his claims for IIED and NIED. Should Miletak wish to file an amended complaint, he must do so by **August 2, 2024.**

**IT IS SO ORDERED.**

Dated: July 3, 2024

EDWARD J. DAVILA
United States District Judge